## Pak v. Allstate Insurance Co.

*George J. Daniel*, for plaintiff.
*James F. Swartz III*, for defendant.
WALLITSCH, *J.*, July 17, 1992—

## ORDER

Now, July 17, 1992, upon consideration of the written briefs and oral argument of counsel, and for the reasons expressed herein, it is ordered that the defendant's motion for summary judgment is denied without prejudice to defendant to bring another such motion in accordance with this opinion.

## DISCUSSION

Plaintiff alleges that he was involved with an accident due to the actions of an unidentified driver. The unidentified driver caused plaintiff to swerve to avoid an impact, resulting in plaintiff losing control of the car striking a guard rail and crashing into a telephone pole. Defendant maintains that under the relevant statutory provisions and the terms of the policy, plaintiff is not entitled to uninsured motorist coverage and therefore seeks summary judgment.

In the definition section of 75 Pa.C.S. §1702, "uninsured motor vehicle" has three separate definitions. The third definition is the one applicable to this case. It reads:

"An unidentified motor vehicle that causes an accident resulting in injury provided the accident is reported to the police or proper governmental authority and the claimant notifies his insured within 30 days, or as soon as practicable thereafter that the claimant or his legal representative has a legal action arising out of the accident."

In this case the plaintiff does not know the identity of the automobile (or its driver) that allegedly ran him off the road. Therefore, the car is clearly "unidentified." The plaintiff did not talk with the police because he was severely injured in the accident and lapsed into a coma. He remained hospitalized for 40 days. However, a police officer did investigate the crash and a report was filed. Thus, the notification to the police or governmental authority portion of the definition is met. The final portion of the definition requires the claimant to notify the insurance carrier within 30 days of a legal action arising out of the accident. Plaintiff did notify the insurance company of a claim (first party benefit claim) but not the *uninsured motorist claim* now at issue.

The Superior Court in the case of *Jackson v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 394 Pa. Super. 274, 575 A.2d 626 (1990), said that:

"The purpose of the statute [defining uninsured vehicle] was to prevent fraud and the attempted recovery of benefits in cases where accidents were alleged to have been caused by 'phantom' vehicles." *Id.* at 276, 575 A.2d at 628 n.2. (citations omitted)

Therefore, it would seem logical that the way in which the notice provision to the carrier prevents fraud is to

give the carrier timely notice of a "phantom" vehicle's participation in the accident. The carrier could then investigate and attempt to identify the phantom. Once identified, the phantom could be held liable for any damages to the injured party or any subrogation to the carrier. However, if the carrier is notified of the phantom long after any trail is cold, the carrier is prejudiced in not being able to conduct any meaningful investigation. Therefore, we can resolve this particular part of the controversy by answering the following query: Was the notification to the carrier sufficient to put it on notice that a phantom vehicle was involved in plaintiff's accident?

The claim form which plaintiff sent to defendant is not presently a part of this record. For that reason we have a genuine issue of material fact, which for the purposes of this motion we must resolve in favor of the plaintiff. However, if defendant can produce the initial first party claim form, and that form does not give defendant notice of the "phantom driver" then defendant may submit another summary judgment motion on this issue.

For the limited purpose of deciding this motion, we find that the car plaintiff alleges forced him off the road precipitating this accident is an uninsured motor vehicle as that term is defined in 75 Pa.C.S. §1702. However, defendant has raised another defense to this claim. There is a provision in this policy which requires corroboration of plaintiff's story about another vehicle causing the accident if there is no contact with that vehicle.

The provision in uninsured motorist policies which required physical contact with a vehicle which fled the scene before uninsured motorist coverage could apply was specifically voided and ruled unenforceable as being contrary to the uninsured motorist provisions of the Uninsured Motorist Coverage Act (1963, P.L. 909) in *Webb*

*v. United Services Automobile Association,* 227 Pa. Super. 508, 522, 323 A.2d 737, 744 (1974). Quoting the Florida Supreme Court which addressed the physical contact rule in *Brown v. Progressive Mutual Insurance Co.,* 249 So. 429, 430 (1971), our Superior Court said:

"The only reason for such a requirement is to prove that the accident actually did occur as a claimant may say it did. This is a question of fact to be determined by the [trier of fact]." *Webb, supra* at 521, 323 A.2d at 743. (footnote omitted)

The provision in defendant's policy in the instant case regarding corroboration has the exact same purpose as the physical contact rule and is as repugnant to the Motor Vehicle Financial Responsibility Law as the physical contact rule was repugnant to the Uninsured Motorist Coverage Act.

Of the 17 states that have abolished the physical contact rule, two have specifically dealt with policy provisions requiring corroboration of "phantom" hit and run drivers. A policy provision almost identical to the instant one was upheld in *Gobin v. Allstate Insurance Co.,* 54 Wash. App. 269, 773 P.2d 131 (1989). However, this policy provision was derived from the statutory language of the Washington Uninsured Motorist Act. See Wash. Rev. Code §48.22.030(8)(a). There was no specific statutory language in the case of *Pasterchick v. Insurance Co. of North America,* 150 N.J. Super. 90, 374 A.2d 1243 (1977). In that case the New Jersey court voided a similar provision to the one at bar. The key distinction between these cases is the language of the Uninsured Motorist Act in the respective states. Unlike Washington, where specific statutory provisions allowed for corroboration as defined in the policy, New Jersey did not include cor-

roboration language. Therefore, the policy language requiring corroboration was "an impermissible qualification of the statutory mandate." *Pasterchick, supra* at 94, 374 A.2d at 1245.

Our statute, like that of New Jersey, does not contain a provision for corroboration of hit and run accidents when there is no physical contact. The *Pasterchick* analysis comports with our Commonwealth's interpretation of the physical contact rule, and is factually closer to our situation than is the *Gobin* case. Thus, we are inclined to say, as did the *Pasterchick* court, that the corroboration provision of defendant's policy is repugnant to our Motor Vehicle Financial Responsibility Act.

The purpose of the corroboration provision is the same as the physical contact rule. They both attempt to prevent fraudulent claims when insureds are run off the road by "phantom" drivers. However, the physical contact rule was rejected by our courts because it had the potential to defeat valid claims when the negligent party escaped. Instead, an attempt was made to balance the need for innocent victims to be permitted to bring valid claims while at the same time protect against fraudulent claims. The burden of proving the existence of a hit and run driver remains on the plaintiff. Defendant is thereby protected against fraud while the plaintiff is given the opportunity to prove a valid claim.